**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Karlsson Group, Inc., et al., | ) ) |
| Plaintiffs, | ) ) No. CV-07-0457-PHX-PGR |
| vs. | ) ) |
| Langley Farm Investments, LLC, et al., | ) ) ORDER ) |
| Defendants. | ) ) |

DEFENDANT RENSKO, INC. AND MILLARD "MICKEY" OKSNER'S MOTION
FOR SUMMARY JUDGMENT, AND SANCTIONS

Among the dispositive motions pending before the Court is Defendant

Rensko, Inc. and Millard "Mickey" Oksner's Motion for Summary Judgment, and

Sanctions (doc. #61).[1] Having reviewed the parties' memoranda in light of the

cited-to evidence of record, the Court finds that the existence of genuine issues of

material fact preclude the granting of summary judgment to the moving

defendants pursuant to Fed.R.Civ.P. 56, and that because summary judgment is

not appropriate, that sanctions against the plaintiffs' counsel pursuant to 28

---

[1] Although the parties have requested oral argument, the Court finds that
oral argument would not aid the decisional process.

U.S.C. § 1927 are also not appropriate.[2]

Background[3]

This action is one of five related lawsuits that have arisen from the disputed sale of 5,075 acres of land known as the Petrified Forest Ranch in Apache County ("the property".)  PFR, LLC, ("PFR"), the seller of the property, entered into a brokerage agreement in December, 2003 with real estate broker Millard "Mickey" Oksner, operating as Rensko, Inc. (collectively "Oksner"), to sell the property.  In October, 2004, Oksner signed a letter agreement with the Karlsson Group, through its president, Anders Karlsson (collectively "Karlsson"), regarding Karlsson's purchase of the property.  When the parties could not thereafter agree on the terms of a formal contract, Karlsson asserted that the letter agreement was a valid contract while PFR asserted that it was not because Oksner lacked the authority to enter into a binding agreement and because PFR's membership had not approved the transaction.

Meanwhile, in November, 2004, PFR entered into a contract to sell the property to ACRES4U Land & Development, LLC ("ACRES4U"), which was operating on behalf of Langley Farm Investments, LLC ("Langley").  Given PFR's dispute with Karlsson, PFR's contract with ACRES 4U contained a provision, known as paragraph 20, that made the sale to ACRES4U conditional on PFR not

---

[2]

While the Oksner-related defendants have moved to strike the plaintiffs' response as untimely, the Court declines to strike it in light of the motions for extensions of time filed by the plaintiffs.  Since none of the plaintiffs' motions had been resolved by the Court prior to the time the plaintiffs' response was filed, the Court will deem the response to have been timely filed.

[3]

Since the parties are familiar with the facts of this case, the Court references the facts here only as they may be relevant to the Court's disposition.

being obligated to sell the property to anyone else and no other party claiming

that PFR was obligated to sell the property to anyone else.

On January 11, 2005, Karlsson filed a diversity of citizenship-based lawsuit

in the U.S. District Court for the Central District of California, <u>Karlsson v. Petrified

Forest Ranch, LLC</u>, 2:05-cv-00238-R-RC ("Karlsson I"), against PFR, two

individuals associated with PFR, and Oksner.  The complaint, which alleged that

the defendants had breached the letter agreement signed by Oksner, sought

specific performance of the letter agreement and to enjoin PFR from selling the

property to anyone else.  The complaint also alleged that Oksner was estopped

from denying his agency authority from PFR and, to the extent that he lacked the

authority to enter into the letter agreement on PFR's behalf, that he had

defrauded Karlsson; it further alleged that PFR and Oksner had conspired to stop

Karlsson from buying the property.

In February, 2005, PFR notified ACRES4U that it was cancelling their

contract pursuant to paragraph 20.  ACRES4U refused to accept the cancellation,

and thereafter assigned its interest in the contract to Langley.

Karlsson and PFR entered into a stipulated settlement of Karlsson I and

the California district court entered an order on March 18, 2005 that dismissed

"the entire action as to all defendants, with prejudice" pursuant to Fed.R.Civ.P.

41.  Oksner never entered an appearance in Karlsson I.

Pursuant to the settlement agreement, PFR agreed to sell the property to

Karlsson and Karlsson agreed to indemnify PFR against litigation by ACRES4U

and Langley; the settlement agreement also provided that any indemnified claims

would be assigned to Karlsson.  PFR conveyed the property to Karlsson on

March 3, 2005 and the deed was recorded in Apache County on March 10, 2005.

On March 11, 2005, Langley filed a action against PFR in the Apache County Superior Court wherein it alleged claims for specific performance of the November, 2004 land sale agreement, breach of contract, breach of implied duty of good faith, and consumer fraud; Langley recorded a notice of lis pendens on the property in Apache County on March 15, 2005.  The superior court subsequently entered summary judgment for PFR, finding that paragraph 20 of the contract permitted PFR to cancel the contract given Karlsson's contention that it had the priority claim to the property.  The Arizona Court of Appeals affirmed the summary judgment to PFR on December 31, 2007.  Langley released the notice of lis pendens on February 7, 2008.

On April 4, 2005, Karlsson filed a second action in the U.S. District Court for the District of California against Langley, ACRES4U, and Oksner arising from ACRES4U and Langely's attempt to purchase the property from PFR.  The complaint alleged claims for interference with contract and/or business opportunity, extortion, abuse of process, interference with quiet enjoyment of property, and conspiracy.  The action was dismissed by the California district court on October 3, 2005 for lack of prosecution.

Langley filed a second suit on February 28, 2007 in Apache County Superior Court, alleging claims against Karlsson and his attorney for intentional interference with contract and to quiet title to the property.  Langley voluntarily dismissed the action after the Arizona Court of Appeals decided in favor of PFR in Langley's earlier state court action.

Karlsson commenced the instant action on February 28, 2007 against Langley and ACRES4U and various related companies and individuals, and Oksner.  Karlsson asserts that its claims against Oksner in the First Amended

Complaint, filed March 20, 2007, are claims that PFR had against Oksner that PFR assigned to Karlsson as part of the settlement of Karlsson I.  The amended complaint alleges in part that Oksner's conduct related to ACRES4U/Langley's attempt to purchase the property constituted (1) an interference with PFR's sale of the property to Karlsson, (2) a breach his listing/brokerage agreement with PFR, (3) a breach of the covenant of good faith and fair dealing, and (4) a breach of fiduciary duties.

Oksner subsequently filed counterclaims against Karlsson for extortion, tortious interference with business contract, and conspiracy.

Discussion

A. Res Judicata

Oksner seeks summary judgment as to all of the claims brought against him in the First Amended Complaint, *i.e.*, Claims Nos. 1, 5, 6,and 7, in part on the ground that they are barred by the doctrine of res judicata in light of the stipulated dismissal with prejudice entered on March 18, 2005 in Karlsson I.[4]

Since Karlsson I was a diversity case alleging only claims pursuant to California substantive law, this Court must apply California preclusion law to determine the effect, if any, to be given to the dismissal of that case.  Semtek International Inc. v. Lockheed Martin Corp., 531 U.S. 497, 506, 121 S.Ct. 1021, 1027 (2001); Giles v. General Motors Acceptance Corp., 494 F.3d 865, 884 (9th

_____

[4]      Oksner also seeks summary judgment on Claim No. 8, the conspiracy claim against all defendants in the First Amended Complaint.  However, since Karlsson concedes in its response that the conspiracy allegations are not meant to be a separate claim notwithstanding the manner in which the First Amended Complaint is drafted, the Court construes the complaint as not alleging any separate claim for conspiracy.

1    Cir. 2007).  The California Supreme Court has defined the doctrine of res

2    judicata, in the sense of claim preclusion, as follows: "a final judgment, rendered

3    upon the merits by a court having jurisdiction of the cause, is conclusive of the

4    rights of the parties and those in privity with them, and is a complete bar to a new

5    suit between them on the same cause of action.") Goddard v. Security Title Ins. &

6    Guarantee Co., 92 P.2d 804, 806 (Cal.1939); accord, Busick v. Workmen's

7    Comp. Appeals Bd., 500 P.2d 1386, 1391-92 (Cal.1972); Zevnik v. Superior

8    Court of Los Angeles County, 159 Cal.App.4th 76, 82 (2008).  Res judicata bars

9    the litigation of not only issues that were actually litigated but also issues that

10   could have been litigated. Busick, at 975; Zevnik, at 82.  The Court concludes

11   that Oksner is not entitled to summary judgment on his res judicata defense for

12   several reasons.[5]

13        The first reason, which is not one raised by any party, is that the present

14   record does not establish that the California district court was in fact a court of

15   competent jurisdiction for res judicata purposes, i.e., that it had subject matter

16   jurisdiction over Karlsson I.  The problem arises because the complaint in

---

[5]

        The Court also rejects Oksner's contention that summary judgment is further warranted under the doctrine of collateral estoppel.  One of the requirements of collateral estoppel under California law is that the issue allegedly being relitigated is one that was actually litigated and decided in the previous action. See Zevnik v. Superior Court, 159 Cal.App.4th at 82-83.  An issue is actually litigated for collateral estoppel purposes when it is "properly raised by the pleadings or otherwise, and is submitted for determination, and is determined." Gottlieb v. Kest, 141 Cal.App.4th 110, 148 (2006).  Since Karlsson I was dismissed pursuant to a settlement agreement before any of the issues therein were judicially determined, collateral estoppel cannot bar this action. Rice v. Crow, 81 Cal.App.4th 725, 736 (2000) ("A settlement which avoids trial generally does not constitute actually litigating any issues and thus prevents application of collateral estoppel.")

- 6 -

1    Karlsson I failed to properly allege the existence of diversity of citizenship

2    jurisdiction, which was the sole alleged basis for subject matter jurisdiction.

3    Diversity was predicated on the plaintiffs being California citizens and the

4    defendants being Arizona citizens, but the complaint never properly set forth the

5    citizenship of defendant PFR because it failed to set forth the citizenship of any of

6    the 17 members of that limited liability company, and that information is not

7    otherwise available from the record before the Court. *See* Johnson v. Columbia

8    Properties Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("Notwithstanding

9    LLCs' corporate traits, ... every circuit that has addressed the question treats

10   them like partnerships for the purposes of diversity jurisdiction. ... We therefore

11   join our sister circuits and hold that, like a partnership, an LLC is a citizen of every

12   state of which its owners/members are citizens.") The Court believes that there is

13   a significant unresolved issue as to whether there was in fact complete diversity

14   of citizenship between the plaintiffs and the defendants in Karlsson I.

15       Both the Karlsson I complaint and the First Amended Complaint in this

16   action refer to Donna Cooper as being a manager of PFR during the relevant time

17   period.[6]   Various pieces of information available to the Court strongly suggest

18   that Ms. Cooper was a citizen of California at the time that Karlsson I was

19   commenced:  paragraph 76 of the First Amended Complaint states that plaintiff

20   Anders Karlsson, a California citizen, met with Cooper at her home in California

21   prior to the settlement of Karlsson I; the public records of the Arizona Corporation

22   Commission concerning PFR, of which this Court may take judicial notice, lists

23   ────────────────

           [6]

24           A declaration submitted by Donna Cooper as part of Karlsson's
     opposition to the summary judgment motion (doc. #80-4), executed in Los
25   Angeles, CA on December 10, 2007, states that Cooper has been a "managing
     member of Petrified Forest Ranch, LLC" since its formation in 2004.

26

the address of manager Donna Jean Cooper as being in Hidden Hills, CA; a Westlaw search of California public records lists Ms. Cooper as having a California license as a speech pathologist, and residing, or having resided, in Hidden Hills, Beverly Hills, and Tarzana, CA, and Westlaw does not show Ms. Cooper has having any assets or a professional license in Arizona; and Oksner's third-party complaint (doc. #32) filed in this action alleged that Ms. Cooper was a resident of California.

If there was no complete diversity of citizenship in Karlsson I, then the California district court only had the authority to dismiss that action for lack of subject matter jurisdiction, and such a dismissal is not one on the merits for res judicata purposes. Segal v. American Telephone and Telegraph Co., 606 F.2d 842, 844 (9th Cir.1979) ("Although a judgment of dismissal for lack of jurisdiction is valid and final, the judgment does not bar another action by the plaintiff on the same claim.")

The second reason is that Karlsson I was terminated by a court order accepting the parties' stipulation for dismissal with prejudice.  While such a dismissal would bar the plaintiffs from refiling the same claims in the California district court which entered it (assuming the initial existence of subject matter jurisdiction in the earlier action), Headwaters Inc. v. U.S. Forest Service, 399 F.3d 1047, 1052 (9th Cir.2005) ("We have held that a stipulated dismissal of an action with prejudice in a federal district court generally constitutes a final judgment on the merits and precludes a party from reasserting the same claims in a subsequent action in the same court[,]") such a stipulated judgment does not categorically bar the refiling of the same action in this Court.  Semtek International Inc. v. Lockheed Martin Corp., at 506, 121 S.Ct. at 1027 (Supreme

- 8 -

Court noted that while a dismissal with prejudice in an earlier case "is undoubtedly a necessary condition, but it is not a sufficient one, for claim-preclusive effect in other courts.); *accord*, Headwaters, at 1052 n. 4 (Court, citing to Semtek, noted "that a stipulated dismissal 'with prejudice' under [Fed.R.Civ.P.] 41 ... may not have *res judicata* effect, even for the named parties in that suit, in another court.").  Whether the Karlsson I dismissal has preclusive effect in this Court depends on additional matters, such as whether the California district court passed on the substance of the plaintiffs' claims prior to dismissing the case. *See* Semtek, at 501-03, 121 S.Ct. at 1024-26.  Since the California district court merely accepted the parties' stipulated dismissal, that court did not pass on the substance of the plaintiffs' claims (and in fact could not have if it did not have subject matter jurisdiction over that action.)

The third reason is that the Court, viewing the current record in the light most favorable to Karlsson, cannot conclude as a matter of law that Karlsson is seeking to litigate the same claims in this action that were dismissed with prejudice in Karlsson I on March 18, 2005.  Karlsson argues in its response that res judicata does not bar its current claims, which it asserts stem from Oksner's breaches of the December, 2003 brokerage agreement between PFR and Oksner and not from the previously litigated breaches of  the October, 2004 letter agreement between Karlsson and PFR, because it is "now asserting against the Oksner Parties only those claims which originated with PFR, LLC, and assigned to Plaintiffs effective May 24, 2005."[7]  In its motion, Oksner argues the current

---

[7]

Based on Karlsson's avowal that all of its claims in the First Amended Complaint directed at Oksner arise solely from Oksner's alleged breach of his brokerage agreement with PFR, the Court will so construe the complaint and will not permit Karlsson to prosecute any direct personal, *i.e.*, non-assigned, claim, if

1    claims are barred by res judicata even if they are assigned claims because PFR

2    had no surviving claims against him to assign to Karlsson after the dismissal of

3    Karlsson I inasmuch as the current claims were compulsory cross-claims that

4    PFR should have brought against Oksner, but did not, in Karlsson I.[8]  The Court

5    cannot agree because any claims that PFR might have had against co-defendant

6    Oksner in Karlsson I would have been cross-claims, which are always permissive

7    under Fed.R.Civ.P. 13(g), Peterson v. Watt, 666 F.2d 361, 363 (9th Cir.1982), and

8    non-litigated permissive cross-claims cannot form the basis for a res judicata

9    defense.[9]  Id. ("[I]f such a claim [a permissive cross-claim] is neither asserted nor

---

11    any, it may otherwise still have against Oksner.

12        [8]
          While Oksner also argues that the specific terms of the settlement
13    agreement between Karlsson and PFR "suggest" that PFR had no claims to
      assign to Karlsson that it held against Oksner because the agreement provides
14    that Karlsson would not indemnify PFR as to any legal action that PFR
      commenced against Oksner, the Court will not consider that argument for
15    purposes of resolving the summary judgment motion because Oksner raised it for
      the first time in his reply; the issue could have, and should have, been raised in
16    Oksner's initial memorandum so that Karlsson could have responded to it.  Cf.
      Sophanthavong v. Palmateer, 378 F.3d 859, 872 (9th Cir.2004) (Court declined to
17    reach new issue raised for the first time in a reply brief because "[t]he unfairness
      of such a tactic is obvious.  Opposing counsel is denied the opportunity to point to
18    the record to show that the new theory lacks legal or factual support."; accord,
      United States v. Puerta, 982 F.2d 1297, 1300 n.1 (9th Cir.1992) ("New arguments
19    may not be introduced in a reply brief.")

20        [9]
          Oksner's reliance on Calif. Code of Civil Procedure § 426.30 does not
21    change the Court's conclusion with regard to the cross-claim issue.  Section
      426.30(a) provides that "if a party against whom a complaint has been filed and
22    served fails to allege in a cross-complaint any related cause of action (at the time
      of serving his answer to the complaint) he has against the plaintiff, such party
23    may not thereafter in any other action against the plaintiff the related cause of
      action not pleaded."  This provision has no application to the assigned claims
24    because (1) those claims are not claims that PFR had against Karlsson,

- 10 -

1  litigated, the parties cannot be barred from asserting it in a later action by

2  principles of res judicata, waiver, or estoppel.")

3       The fourth reason that summary judgment cannot be entered in Oksner's

4  favor on the res judicata defense is that Karlsson has submitted significant

5  probative evidence showing that the factual bases for its current claims did not

6  arise until after the dismissal of Karlsson I.[10]  Under California law, res judicata is

7  not a bar to claims filed in a subsequent action if those claims arose after the

8  initial complaint in the previous action was filed.  Yager v. Yager, 60 P.2d 422,

9  425 (Cal.1936) ("It is a general rule that a party cannot put in issue rights

10  acquired pendente lite unless a supplemental pleading is filed, and, if such a

11  pleading is not filed, he is not foreclosed from asserting such rights in a

12  subsequent action."); Allied Fire Protection v. Diede Construction, Inc., 127

13

14  (2) Karlsson has presented evidence showing that the assigned claims were not
known to PFR prior to the dismissal of Karlsson I and therefore not subject to

15  § 426.30(a), see AL Holding Co. v. O'Brien & Hicks, Inc., 75 Cal.App.4th 1310,
1313-14 (1999), (3) § 426.30(b)(1) provides that § 426.30(a) does not apply if the

16  court in which the action is pending did not have jurisdiction to render a personal
judgment against the person who failed to plead the related cause of action, and

17  there is a significant issue as to whether the Karlsson I court had diversity
jurisdiction over the action, and (4) § 426.30(b)(2) provides that § 426.30(a) also

18  does not apply if the person who failed to plead the related cause of action did
not file an answer to the complaint against him, and the docket sheet of Karlsson

19  I establishes that PFR never filed an answer prior to the dismissal of the action.

20       [10]

21       For example, PFR managing member Donna Cooper states in
paragraph 10 of her declaration (doc. #80-4) that "[a]s of March 28, 2005, I was

22  not aware of any evidence or information that ACRES4U and Langley Parties had
made or would make any claims that Oksner in effect undercut the clauses

23  inserted by Richard Keyt to protect PFR, LLC in the ACRES4U [Langley] Contract
[Par. 20 of the ACES4U Contract], and the consequential cancellation, by offering

24  oral assurances to them that notwithstanding those clauses, PFR, LLC would sell
to them, not Karlsson.  This was first learned in discovery in the Langley Action,

25  in July 2005."

26

1   Cal.App.4th 150, 155 (2005) ("The general rule that a judgment is conclusive as

2   to matters that could have been litigated does not apply to new rights acquired

3   pending the action which might have been, but which were not, required to be

4   litigated.") (Internal quotation marks omitted.); *see also*, Calif. Code of Civil

5   Procedure § 1047 ("Successive actions may be maintained upon the same

6   contract or transaction, whenever, after the former action, a new cause of action

7   arises therefrom.")

8   B. Statute of Limitations

9          Oksner also seeks summary judgment on the claims against for him for

10  interference with contracts and/or business opportunities, breach of the covenant

11  of good faith and fair dealing, and breach of fiduciary duties on the ground that

12  those claims are tort claims that are barred by the two-year limitations period of

13  A.R.S. § 12-542.[11]  Oksner contends that these tort claims are time-barred

14  because they accrued on October 12, 2004, the date that Oksner signed the

15  letter agreement with Karlsson.

16         While the Court agrees that the Arizona statutes of limitations govern this

17  action, Nevada Power Co. v. Monsanto Co., 955 F.2d 1304,1306 (9th Cir.1992)

18  ("[F]ederal courts exercising diversity jurisdiction are to use state statutes of

19  limitation[,]") and that the tort claims at issue are governed by Arizona's two-year

20  limitations period, *see* Clark v. AiResearch Manufacturing Co. of Arizona, 673

_____

[11]

            Oksner concedes that the limitations defense does not apply to the
breach of contract claim alleged against him.
            While it is not absolutely clear from the First Amended Complaint, the
Court construes the claim for breach of the covenant of good faith and fair dealing
as sounding in both contract and tort.  The Court's discussion of the statute of
limitations issue applies only to the tort aspect of the claim.

1    P.2d 984, 987 (Ariz.App.1983) ("We agree ... that the two year statute of

2    limitations in A.R.S. § 12-542 governs claims for wrongful interference with

3    contract[.]"); CDT, Inc. v. Addison, Roberts & Ludwig, C.P.A., P.C., 7 P.3d 979,

4    981 (Ariz.App.2000) (Court noted that A.R.S. § 12-542 applies to actions for

5    breach of fiduciary duty); Stratton v. American Medical Security, Inc., 2008 WL

6    2039313, at *3 (D.Ariz. May 12, 2008) (Court noted that claims for breaches of

7    implied covenant of good faith and fair dealing have a limitations period of two

8    years pursuant to A.R.S. § 12-542), the Court concludes that the current record,

9    viewed in Karlsson's favor, precludes a finding that Karlsson's assigned tort

10   claims are time-barred as a matter of law.

11          Under Arizona's discovery rule, a cause of action does not accrue for

12   purposes of the statute of limitations until the plaintiff knows, or with reasonable

13   diligence should know, the facts underlying the cause of action.  Doe v. Roe, 955

14   P.2d 951, 960 (Ariz.1998).  While a plaintiff need not know all of the facts

15   underlying a cause of action to trigger accrual, the plaintiff must at least possess

16   minimum knowledge sufficient to identify both that a wrong occurred and that it

17   caused injury. Id., at 961.

18          Since Karlsson avows that the tort claims at issue are claims that were

19   assigned to it from PFR, the critical issue is whether PFR knew or should have

20   known of the critical facts underlying them more than two years prior to the

21   commencement of this action on February 28, 2007.  This issue cannot be

22   decided as a matter of law because Karlsson has submitted significant probative

23   evidence creating a triable issue of fact as to when PFR learned of Oksner's

24   alleged misconduct related to the ACRES4U/Langley contract that Karlsson

25   asserts underlie these claims.  For example, as previously noted, Donna Cooper

26

has submitted a declaration stating that neither she nor PFR had any information

prior to March 28, 2005 that Oksner had done anything at variance with his legal

and contractual duties to PFR injurious to PFR other than his alleged omissions

related to the letter agreement with Karlsson that were the basis of Karlsson I.[12]

*See* Nevada Power Co., 955 F.2d at 1307 (Court noted that under federal law,

which in diversity cases governs when an issue is one of law for the Court to

decide or one of fact for the jury to determine, the issue of when discovery

occurred and a cause of action accrued for purposes of a statute of limitations "is

generally inappropriate for resolution on summary judgment" and "may be

decided as a matter of law only when uncontroverted evidence irrefutably

demonstrates plaintiff discovered or should have discovered the [tortious]

conduct.").

LANGLEY AND VAN WAGNER PARTIES' AMENDED MOTION TO DISMISS
THE COMPLAINT

Also pending before the Court is the Langley and Van Wagner Parties'

Amended Motion to Dismiss the Complaint (doc. #92)[13], where in they argue that

the claims against them should be dismissed for lack of subject matter jurisdiction

and for failure to state a claim.   Having considered the parties' memoranda in

---

[12]

To the extent that Karlsson is in fact alleging tort claims against
Oksner directly related to the execution of the letter agreement with Karlsson in
October, 2004, the Court agrees with Oksner that any such claims are time-
barred.

[13]

The Langley-related parties consist of Langley Farm Investments,
LLC, Langley Petrified Forest Ranch, LLC, Langley Land, LLC, Steven G. Rees,
Stacey J. Brimhall and Parshelle S. Brimhall and the Van Wagner-related parties
consist of Albert E. Van Wagner, Jr. and Albert E. Van Wagner, Jr. P.C.
(collectively "Langley")

- 14 -

light of the relevant record, the Court finds that the motion should be granted in part and denied in part.

A. Lack of Subject Matter Jurisdiction[14]

　　　Langley initially argues, without citation to any supporting case law, that there is no diversity of citizenship jurisdiction in this action pursuant to 28 U.S.C. § 1359[15] because Karlsson was collusively joined as a plaintiff in place of the allegedly non-diverse PFR.[16]   Assuming that Langely has not waived its conclusory argument by its failure to even mention it in its reply, the Court finds that the argument lacks merit.

　　　First, the collusion issue need not even be resolved since Karlsson has alleged its own personal claims against Langley in addition to assigned claims obtained from PFR and Langely does not argue that Karlsson is not diverse from the defendants in this action.

---

[14]

　　　To the extent that Langley is contending that a dismissal is warranted because there is no federal question jurisdiction, the Court considers that to be a non-issue as the First Amended Complaint rests solely on diversity of citizenship jurisdiction notwithstanding that Karlsson's sloppy drafting of the First Amended Complaint failed to remove all vestiges of the federal question jurisdiction-related allegations that the Court dismissed from Karlsson's original complaint.

[15]

　　　28 U.S.C. § 1359 provides that "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."

[16]

　　　Although both Langley and Karlsson both contend that there is no dispute that PFR is an Arizona citizen, apparently merely because it is an "Arizona LLC," the Court does not in fact know the citizenship of PFR because neither side has cited to any evidence in the record that establishes the citizenship of each of PFR's 17 members.

- 15 -

Second, Karlsson has met its burden of establishing a lack of collusion regarding the assigned claims because it has submitted evidence showing both that there was no previous ownership connection between it and PFR, and that there was a legitimate and non-pretextual business reason for the assignment of the claims, *i.e.*, that the assignment was part of the settlement of Karlsson I. *See* Yokeno v. Mafnas, 973 F.2d 803, 810 (9th Cir.1992) (No collusiveness exists for purposes of §1359 if the party asserting diversity establishes that there was a legitimate and non-pretextual business reason for the assignment that created the diversity.)

B. Failure to State a Claim

Langley also seeks the dismissal of all of the claims against it pursuant to Fed.R.Civ.P. 12(b)(6) on the ground that none of them properly state a claim.[17] The Court concludes that the motion should be granted in part and denied in part.

The Court initially notes that since Karlsson has conceded in its response that Claim No. 2 of the First Amended Complaint (Interference with Quiet Enjoyment of Property) "does not state a claim different from that in Claim No.1"

---

[17]

While Langley contends in its reply that the Court should treat this aspect of its motion as a motion for summary judgment pursuant to Fed.R.Civ.P. 12(d), apparently because its motion incorporates by reference the statement of facts it included with its essentially identical first motion to dismiss, the Court declines to do so. Langley clearly states in its amended motion that the purpose of this portion of its motion is "[t]o dismiss the Karlsson Parties' Complaint for failure to state a cause of action upon which relief may be granted pursuant to FRCP 12(b)(6)[;]" if Langley wanted to file a motion for summary judgment pursuant to Fed.R.Civ.P. 56, it could have, and should have, done so. Furthermore, the Court declines to search through the previously-filed statement of facts to find relevant citations to the record given Langley's failure in both of its memoranda  to "include citations to the specific paragraph in the statement of facts that supports factual assertions made in the memoranda[,]" as mandated for a summary judgment motion by LRCiv 56.1(e).

(Interference with Contracts and/or Business Opportunities), the Court will dismiss Claim No. 2 as duplicative.  As previously noted, the Court construes the First Amended Complaint as not alleging any separate claim for conspiracy notwithstanding Claim No. 8 (Conspiracy) because Karlsson concedes in its response to Langley's motion that Claim No. 8 "merely states general allegations that apply to all other claims" and was not meant to be a separate claim.

(1) Interference with Contracts and/or Business Opportunities

According to Karlsson, Claim No. 1 of the First Amended Complaint, as it applies to Langley, asserts Karlsson's personal claims against Langley for interfering with Karlsson's contract/business opportunities with PFR commencing on February 28, 2005.  The gist of the claim is that ACRES4U's threat to PFR, made on behalf of Langely, to sue PFR if PFR did not sell the property to it substantially increased the price of Karlsson's purchase of the property and its legal expenses because PFR conditioned the sale to Karlsson on Karlsson's agreement to indemnify it against any ACRES4U/Langley suit, and that Langley's subsequent suit against PFR in state court and its filing of the lis pendens further increased Karlsson's costs related to the property and interfered with its economic exploitation of the property.

Langley argues in part that this claim should be dismissed for failure to state a claim.  The Court cannot agree.  In resolving the Rule 12(b)(6) aspect of the motion, the Court must take all allegations of material fact in the First Amended Complaint as true and must construe them in the light must favorable to Karlsson.  It may grant the motion to dismiss as to any specific claim only if Karlsson has failed to plead enough facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955

- 17 -

(2007).

In Arizona, "[t]ort liability may be imposed upon a defendant who intentionally and improperly interferes with the plaintiff's rights under a contract with another if the interference causes the plaintiff to lose a right under the contract." Snow v. Western Savings & Loan Ass'n, 730 P.2d 204, 211 (Ariz. 1986).   In order to plead a prima facie case of intentional interference with contract or business expectancy, Karlsson must allege facts sufficiently showing: (1) the existence of a valid contractual relationship or business expectancy; (2) Langley's knowledge of the relationship or expectancy; (3) intentional interference by Langley inducing or causing a breach or termination of the relationship or expectancy; (4) resultant damage to it caused by the disruption of its relationship or expectancy; and (5) that Langley acted improperly. *Id.*; Dube v. Likins, 167 P.3d 93, 98 (Ariz.App.2007).

Langley conclusorily argues in its motion that the contractual interference claim must be dismissed because Karlsson cannot satisfy the third element because nothing it did caused either Karlsson or PFR to breach their settlement agreement since their agreement was in fact fulfilled.[18]   The Court is

---

[18]   In its reply, Langley improperly argues for the first time that the intentional interference claim should be dismissed on the additional grounds that Karlsson cannot satisfy the first, second and fifth of the required elements.  As the Court has already noted, *see* footnote 7, the Court will not consider a moving party's new arguments in a reply that could have been raised in the motion itself. But even if the Court were to consider these new arguments, they are insufficient to require the dismissal of Claim No. 1.

First, Langley's contention regarding the first element, *i.e.,* that the letter agreement of October, 2004 did not create a valid contractual relationship between Karlsson and PFR because Oknser did not have the authority to sign it, and its contention regarding the second element, *i.e.,* that it had no knowledge of the settlement agreement between Karlsson and PFR when it filed its first state

unpersuaded because the allegations of the First Amended Complaint, viewed in Karlsson's favor, are sufficient to allege that Langley's actions at least in part induced PFR to breach the letter agreement, forcing Karlsson to agree to PFR's demand that Karlsson indemnify it against any legal action taken against it by Langley as an additional condition of PFR selling the property to Karlsson.[19] Furthermore, it is not clear under Arizona law that an actual breach of a contract or business expectancy must in fact occur before an intentional interference claim can be prosecuted.  *See* Bar J Bar Cattle Co., Inc. v. Pace, 763 P.2d 545, 547 (Ariz.App. 1988) (Court, although noting that one of the elements of the tort of intentional interference with contract is intentional interference inducing or causing a breach, stated that "[w]rongful interference rests on improper conduct by the defendant, a stranger to the contract, not on whether a breach followed.

court action and recorded the lis pendens, cannot be resolved through this Rule 12(b)(6) motion given the allegations of the First Amended Complaint, which the Court must construe in Karlsson's favor.   The First Amended Complaint alleges, for example, that Oksner had full authority from PFR to sign the letter agreement, that Langley, through its representatives, knew that there was a competing buyer for the property before it entered into its contract with PFR and before its filed its first state action and recorded the lis pendens, and that the deed showing the sale of the property from PFR to Karlsson was recorded in Apache County prior to Langley's filing of its first state court action there.

       Second, Langley's conclusory contention regarding the fifth element, *i.e.,* that it did not act improperly in filing the first state court action because the Apache County Superior Court has already concluded that Langley filed the action in good faith, cannot be resolved at this time because Langley has made no effort to discuss the elements of res judicata and/or collateral estoppel and how those preclude the litigation of the propriety of Langley's conduct in this action.

    [19]

       The Court notes that the existence of genuine issues of material fact would preclude the granting of summary judgment in Langley's favor on this claim even if the Court were to consider Langley's motion as one pursuant to Fed.R.Civ.P. 56.

That no breach of contract occurred should give us pause in determining whether defendant's conduct was wrongful, but it does not preclude liability if he otherwise caused harm.")

Langley also argues in its motion, but not in its reply, that the intentional interference claim must be dismissed because it is time-barred under the two-year limitations period of A.R.S. § 12-542.  The Court may dismiss a claim on limitations grounds only if the Court, after accepting the allegations of the First Amended Complaint as true, can determine that the running of the statute of limitations is apparent from the face of the complaint.  *See* Huynh v. Chase Manhattan Bank, 465 F.3d 992, 997 (9th Cir.2006).  The Court cannot make that determination here.

As previously noted, a cause of action does not accrue under Arizona law until the plaintiff knows, or with reasonable diligence should know, the facts sufficient to identify both that a wrong occurred and that it caused injury.  Doe v. Roe, 955 P.2d at 960.  The factual allegations of the First Amended Complaint, taken as true, are sufficient to show that Karlsson's claims against Langley arose within two years of the commencement of this action on February 28, 2007.   For example, the First Amended Complaint alleges that Karlsson did not learn of ACRES4U's threats to PFR to pursue litigation to prevent the sale of the property to Karlsson until on or after February 28, 2005, and that Langley did not initiate the litigation in the state court that included the filing of its notice of lis pendens on the property until March, 2005.

(2) Abuse of Process and Unlawful Use of Lis Pendens

Karlsson's abuse of process claim, as set forth in Claim No. 3 of the First Amended Complaint, is based solely on the lis pendens that Langely filed and

- 20 -

recorded on the property as part of its first state court action; the gist of the claim is that since the lis pendens was filed for the ulterior purpose of seeking to compel Karlsson to surrender all or part of its interest in the property, the lis pendens was unlawful and unlawfully used under A.R.S. § 33-420.  Langley argues that Claim No. 3 must be dismissed because it fails as a matter of law. The Court agrees.

Claim No. 3 facially fails to state a claim because an essential element of the tort of abuse of process is "a willful act in the use of judicial process," Nienstedt v. Wetzel, 651 P.2d 876, 881 (Ariz.App.1982), and the filing of a notice of lis pendens does not amount to the use of judicial process under Arizona law as it is not an act done in the name of the court and under its authority.  Gray v. Kohlhase, 502 P.2d 169, 172-73 (Ariz.App.1972) (Court affirmed the summary dismissal of a counterclaim for abuse of process that was based on the filing of a lis pendens.)  See also, Woodcourt II Limited v. McDonald Co., 119 Cal.App.3d 245, 251-52 (1981) (Court, citing in part to Gray v. Kohlhase, affirmed the dismissal of an abuse of process claim on the ground that the recording of a notice of lis pendens "does not constitute process in the sense that 'abuse of process' is used.")

(3) Extortion

Claim No. 4 of the First Amended Complaint alleges that Langley committed extortion or attempted extortion by filing the state court action and the notice of lis pendens, and by demanding that Karlsson quitclaim the property to it or face litigation.  Langley argues, and the Court agrees, that this case should be dismissed even if a separate tort claim for extortion in fact exists under Arizona law, which is in fact questionable.  Although Karlsson, citing to Lundvall v.

Hughes, 65 P.2d 1377 (Ariz.1937), contends in its response that this claim is actually one for duress, the First Amended Complaint does not state any claim for duress.  In order to constitute actionable duress, "the threat must be of some act which causes such fear in the person threatened as to preclude him from exercising free will and judgment in entering into the transaction, and that the act threatened must be an unlawful one." *Id.* at 1378.  The First Amended Complaint does not sufficiently allege that anything Langley did towards Karlsson amounted to duress.  Furthermore, any duress claim would be duplicative as Karlsson acknowledges in its response that the allegations of this claim are included in the allegations of Claim No. 1 that Langley's actions interfered with Karlsson's contractual and economic opportunities.

(4) Equitable/Declaratory Relief

In Claim No. 9 of the First Amended Complaint, Karlsson seeks in part an order declaring Langley's lis pendens to be unlawful and null and void and directing its removal.[20]  The Court will dismiss this portion of Claim No. 9 because it is moot, given that Langley released the lis pendens in February, 2008.

This portion of the claim is also time-barred.  Any action by Karlsson to have the lis pendens removed as groundless or invalid should have been filed pursuant to A.R.S. § 33-420, *see* Richey v. Western Pacific Development Corp.,

---

[20]

Claim No. 9 is also entitled in part as being one for "Quiet Title". Although Langley seeks the dismissal of the quiet title claim on the ground that it fails to comply with the requirements of A.R.S. § 12-1102, the Court does not reach this issue because the claim does not in fact seek to quiet title to any real property.

Because Langley did not raise the issue in its motion, the Court also does not reach that portion of Claim No. 9 that alleges that "Plaintiffs are entitled and seek an order determining entitlement to the $30,000 proceeds in escrow which were held initially as the Rensko commission."

684 P.2d 169, 173 (Ariz.App.1984), and, as the liability for filing a groundless lis pendens is one created by statute, such an action had to have been filed within the one year limitations period of A.R.S. 12-541(5), which it was not because it is undisputed that Karlsson knew of the lis pendens more than one year before this action was commenced.

Therefore,

IT IS ORDERED that the following motions filed by plaintiffs Karlsson Group, Inc. and Anders Karlsson are all denied as moot: Third Application to Extend Time to Responsively Plead to Cross-Complaint and Third Party Complaint by Rensko, Inc. and Millard "Mickey" Oksner (**doc. #53**); Reasserted and Extended Motion to Stay Proceedings as to Cross-Complaint (**doc. #58**); Application to Enlarge Time to Respond to Motion for Summary Judgment by Defendants Rensko, Inc. and Millard "Mickey" Oksner (**doc. #62**); Revised Motion to Enlarge Time to Respond to Motion for Summary Judgment by Defendants Rensko, Inc. and Millard "Mickey" Oksner (**doc. #71**); and Further Revised Motion to Enlarge Time to Respond to Motion for Summary Judgment by Defendants Rensko, Inc. and Millard "Mickey" Oksner (**doc. #74**).

IT IS FURTHER ORDERED that Defendant Rensko, Inc. and Millard "Mickey" Oksner's Motion to Strike Plaintiffs' Memorandum in Partial Opposition to MSJ as Untimely (**doc. #81**) is denied.

IT IS FURTHER ORDERED that Defendant Rensko, Inc. and Millard "Mickey" Oksner's Motion for Summary Judgment, and Sanctions (**doc. #61**) is denied.

IT IS FURTHER ORDERED that the Langley and Van Wagner Parties' Amended Motion to Dismiss the [First Amended] Complaint (**doc. #92**) is granted

in part and denied in part.[21]  It is granted as to Claim No. 2 (Interference with Quiet Enjoyment of Property), Claim No. 3 (Abuse of Process and Unlawful Use of *Lis Pendens*), Claim No. 4 (Extortion and Attempted Extortion), and that portion of Claim No. 9 (Equitable Relief; Declaratory Relief; Quiet Title) related to the filing of the notice of lis pendens; it is denied as to Claim No. 1 (Interference with Contracts and/or Business Opportunities) and that portion of Claim No. 9 related to the real estate commission issue.[22]

DATED this 8th day of September, 2008.

Paul G. Rosenblatt
United States District Judge

---

[21]

    The Court declines to resolve at this time Karlsson's request that it be allowed to file an amended and/or supplemental complaint.  Any such request must be made through a motion filed in accordance with Fed.R.Civ.P. 15(a) and/or (d) and LRCiv 15.1.

[22]

    Claim No. 8 (Conspiracy) of the First Amended Complaint is deemed not to be a separate claim for relief.