**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Karlsson Group, Inc., et al.,<br><br>        Plaintiffs,<br>  vs.<br><br>Langley Farms Investments, LLC, et al.,<br><br>        Defendants. | No. CV-07-0457-PHX-PGR<br><br>ORDER |

    Pending before the Court is the Langley and Van Wagner-related defendants' Motion to Disqualify Plaintiffs' Counsel (doc. #116), wherein the defendants seek to disqualify the plaintiffs' lead counsel, Meir Westreich, and the plaintiff's local co-counsel, Norman Keyt, from serving as counsel at trial or in any deposition in this case for the reason that they are necessary witnesses in this action.[1] Having considered the parties' memoranda in light of the record in this

---

[1] Also pending is the plaintiffs' Motion for Limited Case Management Order Setting Law and Motion Schedule and Staying Disqualification Motion (doc. #124). In light of the Court's ruling on the motion to disqualify, the Court finds that the motion to stay should be denied as moot; the Court will issue an amended scheduling order in due course.

    The Court notes that there is no issue properly pending before it at this

action, the Court finds that the disqualification motion should be denied in its entirety.

Background

This action is one of several related lawsuits that have arisen from the disputed sale of 5,075 acres of land known as the Petrified Forest Ranch in Apache County ("the property".)  PFR, LLC, ("PFR"), the seller of the property, entered into a brokerage agreement in December, 2003 with real estate broker Millard "Mickey" Oksner, operating as Rensko, Inc. (collectively "Oksner"), to sell the property.  In October, 2004, Oksner signed a letter agreement with the Karlsson Group, through its president, Anders Karlsson (collectively "Karlsson"), regarding Karlsson's purchase of the property.  Meir Westreich was Karlsson's counsel during the negotiations with PFR.  When the parties could not thereafter agree on the terms of a formal contract, Karlsson, through Westreich, asserted that the letter agreement was a valid contract while PFR, through its lead counsel Richard Keyt, asserted that it was not because Oksner lacked the authority to enter into a binding agreement and because PFR's membership had not approved the transaction.

Meanwhile, in November, 2004, PFR entered into a contract to sell the property to ACRES4U Land & Development, LLC ("ACRES4U"), which was operating on behalf of Langley Farm Investments, LLC ("Langley").  Given PFR's dispute with Karlsson, PFR's contract with ACRES 4U contained a provision, known as paragraph 20, that made the sale to ACRES4U conditional on PFR not being obligated to sell the property to anyone else and no other party claiming

---

time concerning the propriety of Albert E. Van Wagner, Jr.'s dual role as both a named defendant and counsel for his co-defendants in this action.

that PFR was obligated to sell the property to anyone else.

On January 11, 2005, Karlsson, through Westreich, filed a diversity of citizenship-based lawsuit in the U.S. District Court for the Central District of California, Karlsson v. Petrified Forest Ranch, LLC, 2:05-cv-00238-R-RC ("Karlsson I"), against PFR, two individuals associated with PFR, and Oksner. The complaint, which alleged that the defendants had breached the letter agreement signed by Oksner, sought specific performance of the letter agreement and to enjoin PFR from selling the property to anyone else. The complaint also alleged that Oksner was estopped from denying his agency authority from PFR and, to the extent that he lacked the authority to enter into the letter agreement on PFR's behalf, that he had defrauded Karlsson; it further alleged that PFR and Oksner had conspired to stop Karlsson from buying the property.

In February, 2005, PFR notified ACRES4U that it was cancelling their contract pursuant to paragraph 20. ACRES4U refused to accept the cancellation, and thereafter assigned its interest in the contract to Langley. On February 28, 2005, an ACRES4U representative telephoned PFR's attorney Richard Keyt and threatened litigation if PFR did not sell the property to it or its assignee Langley.

Karlsson, through Westreich, and PFR, then represented in part by Norman Keyt ("Keyt")[2], Karlsson's current co-counsel, entered into a stipulated settlement of Karlsson I and the California district court entered an order on March 18, 2005 that dismissed the entire action with prejudice pursuant to Fed.R.Civ.P. 41.

---

[2] Norman Keyt is the brother of PFR's lead counsel, Richard Keyt. The brothers have separate law practices.

- 3 -

Pursuant to the settlement agreement, PFR agreed to sell the property to Karlsson and Karlsson agreed to indemnify PFR against litigation by ACRES4U and Langley; the settlement agreement also provided that any indemnified claims would be assigned to Karlsson. PFR conveyed the property to Karlsson on March 3, 2005 and the deed was recorded in Apache County on March 10, 2005.

On March 11, 2005, Langley, through its counsel and current defendant Albert Van Wagner, Jr., filed a action against PFR in the Apache County Superior Court wherein it alleged claims for specific performance of the November, 2004 land sale agreement, breach of contract, breach of implied duty of good faith, and consumer fraud; Langley recorded a notice of lis pendens on the property in Apache County on March 15, 2005. The superior court subsequently entered summary judgment for PFR, finding that paragraph 20 of the contract permitted PFR to cancel the contract given Karlsson's contention that it had the priority claim to the property. The Arizona Court of Appeals affirmed the summary judgment to PFR on December 31, 2007. Langley released the notice of lis pendens on February 7, 2008.

On April 4, 2005, Karlsson, through Westreich, filed a second action in the U.S. District Court for the District of California against Langley, ACRES4U, and Oksner arising from ACRES4U and Langley's attempt to purchase the property from PFR. The complaint alleged claims for interference with contract and/or business opportunity, extortion, abuse of process, interference with quiet enjoyment of property, and conspiracy. The action was dismissed by the California district court on October 3, 2005 for lack of prosecution.

Langley, through Van Wagner, filed a second suit on February 28, 2007 in Apache County Superior Court, alleging claims against Karlsson and his attorney

Westreich for intentional interference with contract and to quiet title to the property. Langley voluntarily dismissed the action after the Arizona Court of Appeals decided in favor of PFR in Langley's earlier state court action.

Karlsson, through Westreich and Keyt, commenced the instant action on February 28, 2007 against Langley, Van Wagner, and ACRES4U and various related companies and individuals, and Oksner. As a result of stipulations, all of Karlsson's claims against the Oksner-related defendants and the ACRES4U-related defendants have been dismissed with prejudice. The Langley and Van Wagner-related defendants (collectively "Langley") are the sole remaining defendants.[3]

In an opinion entered on September 8, 2008 (doc. #106), the Court in part dismissed Karlsson's First Amended Complaint against Langley with the exception of Claim No. 1 (Interference with Contracts and/or Business Opportunities). According to Karlsson, this claim, as it applies to Langley, asserts Karlsson's personal claims against Langley for interfering with Karlsson's contract/business opportunities with PFR commencing on February 28, 2005. The gist of the claim is that ACRES4U's threat to PFR, made on behalf of Langley, to sue PFR if PFR did not sell the property to it substantially increased the price of Karlsson's purchase of the property and its legal expenses because PFR conditioned the sale to Karlsson in part on Karlsson's agreement to indemnify it against any ACRES4U/Langley lawsuit, and that Langley's subsequent suit against PFR in state court and its filing of the lis pendens further

---

[3] The remaining defendants are Langley Farm Investments, LLC, Langley Petrified Forest Ranch, LLC, Langley Land, LLC, Largo Ventures, LLC, Steven G. Rees, Stacy J. Brimhall, Parshelle S. Brimhall, Albert E. Van Wagner, Jr., P.C., and Albert E. Van Wagner.

1  increased Karlsson's costs related to the property and interfered with its
2  economic exploitation of the property.

3  Discussion

4  The disqualification motion filed by the Langley is predicated solely upon Ethical Rule 3.7(a) of the Arizona Rules of Professional Conduct, which is applicable to attorneys appearing before this Court pursuant to LRCiv 83.2(e).[4]

Langley has informed Karlsson that it intends to call Karlsson's attorneys Meir Westreich and Norman Keyt as witnesses regarding the events leading up to and during the events underlying this action; Karlsson states that it intends to present its case without relying on the testimony of either attorney.

In order to avoid the misuse of the advocate-witness rule for improper tactical reasons, Arizona law mandates that "[o]nly in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent." Alexander v. Superior Court, 685 P.2d 1309, 1313 (Ariz.1984). As the Ninth Circuit has noted, disqualification motions should be subjected to "particularly strict scrutiny" because of their potential for abuse. Optyl Eyewear Fashion International Corp. v. Style Companies, Ltd., 760 F.2d 1045, 1050 (9th Cir.1985); cf. Gomez v. Superior Court, 717 P.2d 902, 905 (Ariz.1986)

---

[4]
 ER 3.7, entitled "Lawyer as Witness" states in relevant part:

 (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
  (1) the testimony relates to an uncontested issue;
  (2) the testimony relates to the nature and value of legal services rendered in the case; or
  (3) disqualification of the lawyer would work substantial hardship on the client.

(Court stated that it "view[s] with suspicion" motions to disqualify opposing counsel based on conflict of interest or appearance of impropriety.) As the moving party, Langley has the burden of sufficiently showing why the Court should not uphold the presumption against disqualifying opposing counsel. Alexander, 685 P.2d at 1313. In order to meet that high burden, Langley must establish, individually as to Westreich and Keyt, (1) that the attorney will give evidence material to the determination of the issues being litigated, (2) that such evidence is unobtainable elsewhere, and (3) that the testimony is or may be prejudicial to the testifying attorney's client. Cottonwood Estates, Inc. v. Paradise Builders, Inc., 624 P.2d 296, 302 (Ariz.1981) (discussing DR 5-102, the predecessor to ER 3.7).

A. Meir Westreich

As to the first element, the attorneys' expected testimony must be relevant and material to one or more of the five elements of the only relevant remaining claim against Langley, which is Karlsson's claim for intentional interference with contract or business expectancy.[5] Langley supports its contention that Westreich's testimony is necessary by listing numerous activities that Westreich engaged in during the underlying events in his allegedly pervasive role as Karlsson's attorney and agent; it elaborates to some extent regarding Westreich's

---

[5] The elements of a claim of intentional interference with contract or business expectancy against Langley are (1) the existence of a valid contractual relationship or business expectancy on Karlsson's part, (2) Langley's knowledge of the relationship or expectancy, (3) intentional interference by Langley inducing or causing a breach or termination of the relationship or expectancy, (4) resultant damage to Karlsson caused by the disruption of its relationship or expectancy, and (5) that Langley acted improperly. Snow v. Western Savings & Loan Ass'n, 730 P.2d 204, 211 (Ariz.1986); Dube v. Likins, 167 P.3d 93, 98 (Ariz.App.2007).

- 7 -

expected testimony by stating, for example, that it wants to cross-examine him concerning such matters as Karlsson's claimed damages, including the reasonableness of Westreich's attorney's fees from the underlying litigation and his communications with the defendants concerning the plaintiffs' damages, and his knowledge regarding the timing of the indemnification clause contained in Karlsson's settlement agreement with PFR. While Westreich undoubtedly has relevant knowledge of the underlying events, the Court is not persuaded by Langley's arguments because Langley has made little effort to explain how any testimony by Westreich concerning the activities it has specified is material to the issues relevant to the intentional interference claim. As Karlsson points out in a detailed response to the noted activities, many of these activities involve undisputed issues, legal issues, and issues unrelated to the remaining claim.[6]

As to the second element, Langley conclusorily asserts that it wants to be able to present "the evidence from the beginning to the end, and Westreich is the only person who can testify as to what and why certain actions were taken by the Karlsson Parties." But the only significant elaboration Langley provides as to why the content of Westreich's testimony is unobtainable from other sources is limited to Anders Karlsson, and it only contends as to Karlsson that cross-examining him "would only lead to his inability to testify as to those events in which he did not participate, privilege objections as to what his attorney told him, and lack of any

---

[6] Langley argues in its reply that the Court should at the very least strike Karlsson's separate "objections and proffers" memorandum, if not both it and Karlsson's response, for impermissibly exceeding the allowable page limits set forth in LRCiv 7.2(e). While the much preferable course of action would have been for Karlsson to have sought the Court's permission to file what is in effect an oversize brief, the Court will not strike either of the documents because they add to the Court's ability to resolve the pending motion on its merits.

- 8 -

understanding as to legal claims and maneuvers made by Westreich." Not only does Langley fail to explain what material events Karlsson could not testify about, it also fails to explain how any attorney-client privilege issues applicable to Karlsson, Westreich's client, would also not be applicable to Westreich, *see* ER 1.6(a), nor does it persuasively discount the existence of all other potential witnesses, including possible expert witnesses, or existing documentary evidence relevant to the remaining claim. For example, while Langley states that Westreich is the only real witness who can testify as to the reasonableness of his attorney's fees in the underlying litigation that Karlsson is attempting to recoup as damages, it makes no effort to explain why such evidence cannot be obtained from documentary evidence in the form of Westreich's time sheets and expert testimony analyzing those time sheets.

As to the third element, Langley merely states that it will seek admissions from Westreich which may be detrimental to Karlsson. The only elaboration that it provides is that it wants Westreich to agree that "attorneys generally plead broader complaints for two basic reasons: 1) by a broader pleading, a party seeking discovery will be less likely to confront a relevance objection, and 2) it is far easier to dismiss a cause of action than to add one which is especially true the longer the suit has been around." Langley does not, however, made any real effort to discuss how this admission is detrimental to Karlsson - although it is not entirely clear to the Court, apparently the purpose of the noted admission is to counter Karlsson's allegations in the pending complaint in this action that Langley's inclusion of breach of duty of good faith and consumer fraud claims in its state court lawsuit against PFR was frivolous and added a substantial amount to Karlsson's litigation expenses in that action. The Court is unpersuaded by this

argument because even if Westreich were in effect to act as an expert witness for Langley and make such an admission, it is simply not sufficiently detrimental to Karlsson to be a reason for disqualifying Westreich.

B. Norman Keyt

As to the first element, Langley's cursory explanation as to why Keyt's testimony is relevant and material to the remaining claim is unpersuasive. Langley has listed a number of actions that Keyt undertook, or allegedly should have undertaken, regarding the underlying events, and it has somewhat elaborated upon what it wants Keyt to testify about by stating that it wants to hear what he has to say about his prior role as one of PFR's counsel during the negotiations concerning the sale of the property, including why he opined that Karlsson's letter of intent regarding the purchase of the property was a valid contract and why he gave contradictory statements regarding when the Karlsson-PFR indemnification provision was added to their settlement agreement, and what he has to say about his subsequent responsibilities as Westreich's local counsel after the indemnification provision went into effect, including what advice he gave Westriech in the state court action as to preserving of the issue of attorney's fees and seeking to quash the lis pendens. The Court concludes that these arguments are insufficient to meet the defendants' substantial burden regarding Keyt's disqualification inasmuch as Langley neither discusses how Keyt's noted activities are material and relevant to the intentional interference claim, nor sufficiently explains how Keyt would be able to testify about many of the listed matters given attorney-client privilege and work product issues, and his apparently limited role in PFR's negotiations with Karlsson.

As to the second element, Langley's argument regarding its inability to

obtain elsewhere the evidence it wants to obtain from Keyt is also too cursory and insufficient to be persuasive. It does not, for example, explain why the members of PFR, who were then Keyt's clients, and/or Mickey Oksner, PFR's real estate agent, cannot testify about the sale of the property and other events underlying the intentional interference claim, or why the documentary evidence of the various versions of the Karlsson-PFR settlement agreement cannot establish the date the indemnification provision was added to the settlement agreement.

As to the third element, Langley fails to make any mention in its motion why any expected testimony from Keyt would be detrimental to Karlsson. In its reply, Langley only states that it wants to cross-examine Keyt regarding contrary statements noted in his affidavit submitted with Karlsson's response regarding the timing of the inclusion of the indemnification agreement in the Karlsson-PFR settlement agreement; Langley contends that Keyt's credibility is at issue because Keyt stated in his affidavit that he had mistakenly stated in an August 2, 2007 letter that the indemnification agreement was in the settlement agreement version dated February 5, 2005, whereas in fact the indemnification agreement was included in the final March 4, 2005 settlement agreement. Langley asserts, without any elaboration, that Keyt's former version benefits it while his latter version benefits Karlsson. The Court presumes that Langley's implied contention is that some prejudice to Karlsson's intentional interference claim would arise if Keyt were to testify that the indemnification agreement between Karlsson and PFR was actually entered into prior to ACRES4U's litigation threat to PFR made in late February, 2005. Even if such evidence constitutes a sufficient detriment, it is in effect irrelevant in light of Langley's failure to establish that Keyt is a necessary witness.

After carefully scrutinizing the record presented to it, the Court concludes that disqualification is not required for either Westreich or Keyt under ER 3.7 because Langley has not established the existence of the extreme circumstances necessary for such a disqualification.[7] Therefore,

IT IS ORDERED that the defendants' Motion to Disqualify Plaintiffs' Counsel (doc. #116) is denied.

IT IS FURTHER ORDERED that the plaintiffs' Motion Staying Disqualification Motion (part of doc. #124) is denied.

IT IS FURTHER ORDERED that the plaintiffs' Motion for Limited Case Management Order Setting Law and Motion Schedule (part of doc. #124) is granted to the extent that the parties' shall file an Amended Joint Case Management Report no later than **October 16, 2009**.[8]

IT IS FURTHER ORDERED that a Scheduling Conference shall be held on **Tuesday, November 3, 2009, at 11:30 a.m.** in Courtroom 601 of the Sandra Day O'Connor United States Courthouse, 401 West Washington St., Phoenix, AZ.

DATED this 31st day of August, 2009.

*[signature]*
Paul G. Rosenblatt
United States District Judge

---

[7] Because the Court concludes that Westreich and Keyt have not been shown to be necessary witnesses, the Court does not reach the issue of whether the "substantial hardship" exception to ER 3.7 bars the disqualification of either Westreich or Keyt.

[8] The Amended Joint Case Management Report shall be in the format set forth in the Court's Supplemental Order Setting Scheduling Conference (doc. # 107), entered on September 9, 2008.